# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

        Respondent,

v.

ABDIRAHMAN ABDIRAHMAN
WARSAME, a.k.a. ABDIRAHMAN
ABDIDAHIR WARSAME,

        Appellant.

DIVISION ONE

No. 72305-7-I

UNPUBLISHED OPINION

FILED: November 16, 2015

DWYER, J. — Abdirahman Warsame appeals from the judgment entered on the jury's verdicts finding him guilty of assault in the second degree, assault in the fourth degree, and felony harassment. Warsame claims that the trial court erred in denying his request, made on the third day of trial, to replace his court appointed counsel with a newly retained private attorney. Finding no error, we affirm.

I

On February 13, 2014, the State charged Warsame with assault in the second degree and assault in the fourth degree. Prior to trial, the State was allowed to amend the information to add a charge of felony harassment with the good samaritan aggravator,[1] and a charge of attempted robbery in the second

---

[1] The "good samaritan" aggravator, defined in RCW 9.94A.535(3)(w), permits that a sentence be imposed above the standard range when "[t]he defendant committed the offense against a victim who was acting as a good samaritan."

degree. Warsame pleaded not guilty to all four charges. Before the jury was impaneled and sworn, on the State's motion, the trial court dismissed the attempted robbery charge without prejudice.

On May 27, 2014, trial began and the parties completed pretrial motions. On May 28, the jury was selected, impaneled, and sworn, and the parties delivered their opening statements.[2] On May 29, immediately prior to the State's first witness being called to testify, Warsame requested that the trial court discharge his appointed counsel. Warsame stated that he would "[s]tarting as of now," look for a private lawyer to represent him. He stated that he had spoken to a lawyer and could "pay now" but did not name the attorney or state that he had actually retained the attorney's services.

The State objected to substitution of counsel because it would delay the trial. The prosecutor explained that three witnesses were present and ready to testify. Each witness was reluctant to participate and needed the assistance of a Somali interpreter. The interpreter was also present and ready to assist.

The trial court denied Warsame's request.

The trial went forward. The jury heard testimony from an eyewitness, Nasro Abubakar, and one of the alleged victims, Idris Osman Ali. During a recess in Ali's testimony, Warsame again indicated that he wished to replace his court-appointed counsel with a private attorney.

> MR. GARRETT [Defense Counsel]: Well, perhaps the first and most important issue that may at least moot my involvement is Mr.

---

[2] In a criminal jury trial, jeopardy attaches when the jury is impaneled and sworn. Serfass v. United States, 420 U.S. 377, 388, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975) (Fifth Amendment); State v. Smith, 15 Wn. App. 725, 727, 551 P.2d 765 (1976) (CONST. art. I, § 9).

Warsame has indicated that he has another attorney who should be arriving within 15 minutes who presumably may be prepared to take over the case. I do not know.

MR. WARSAME: Can I speak?

THE COURT: Go ahead, sir.

MR. WARSAME: Your Honor, I believe more than 100 percent that my attorney, the public defender is not doing the best interest of my case. Because this is something to do with my life and I believe I have to take an action in a way that I need to get someone who is really humble, who's really serious, who really –

THE COURT: And who is this person?

MR. WARSAME: She's an attorney. She's on her way. She should be here in the next 30 minutes. And I let her know and she knows –

THE COURT: And she's ready to take over the case . . . ?

MR. WARSAME: I don't think [Mr. Garrett's] ready and he's been telling me he's not ready. That from the beginning of the trial and lately he been telling me I don't think you can win this case, I don't think you cannot [sic] win, and that kills my whole mind. And it's like a manipulation the way I feel, you know, and I just want somewhere and someone that I can feel comfortable and that I can pursue this trial.

In response, the trial judge stated that "I will hear this motion again if a lawyer shows up who is ready and able to take over the case."

At 3:10 p.m., during another recess in Ali's testimony, Warsame's newly-hired attorney arrived. The trial judge stated that, "I'm not going to hear any more motions about counsel until 4:00 [p.m.]. We'll deal with them after this [witness]." The newly-hired attorney then left the courtroom.

After Ali's testimony concluded, bringing the trial day to an end, Warsame renewed his motion to replace his court appointed counsel with his newly retained counsel, now identified as Teri Rogers Kemp. The court entertained the

motion with attorney Rogers Kemp participating by telephone, explaining that her schedule had not allowed her to remain in the courtroom from 3:10 p.m. until 4:00 p.m. that day.

> MR. GARRETT: Your Honor, Luke Garrett for Northwest Defenders. It is my understanding that [Mr.] Warsame does still wish to discharge me and have Ms. –
>
> MR. DOYLE [Prosecutor]: Rogers Kemp.
>
> MR. GARRETT: Ms. Rogers Kemp?
>
> MR. DOYLE: Kemp.
>
> MR. GARRETT: – take my place.
>
> THE COURT: Do we have Ms. Rogers Kemp on the phone is that correct?
>
> MS. ROGERS KEMP: Yes, ma'am. Good afternoon, judge, counsel. Good afternoon.
>
> MR. DOYLE: Good afternoon.
>
> THE COURT: And we are mid-trial on this case. Are you ready, able and willing to take this case on Monday and complete the trial?
>
> MS. ROGERS KEMP: Your Honor, I had a discussion with Mr. Abdi(ph) [sic] and while I am an experienced trial and felony attorney and I could very well be willing, ready and able to step in on Mr. Abdi's case I have expressed that I do not believe this is in the best interest, that his present counsel in whatever state is more versed in these matters, he has been familiar with this matter, the facts, the interviewing of the witnesses, the contents of the witness interviews, et cetera and et cetera. He is in present state more able. If Mr. Abdi is willing to have an attorney who is – because of the timing just not as competent as present counsel and if there is understanding that this is the case then yes I would be ready, willing, and able to step in as counsel. But I do not believe that this is in his best interests. I think that his present counsel is more familiar with this case than I am.

-4-

MR. DOYLE: Okay. I just want the record to reflect – this is William Doyle on behalf of the State – you're referring to Mr. Warsame; correct?

MS. ROGERS KEMP: I am.

THE COURT: State wish to be heard?

MR. DOYLE: I guess perhaps if the Court could ask Ms. Rogers Kemp, so regardless of her opinions as to whether it's in the best interests of the defendant, is Ms. Rogers Kemp saying that she would be prepared to continue this trial on Monday and actually provide effective assistance of counsel?

MS. ROGERS KEMP: And that is the issue. I am an experienced felony attorney. I believe that I can pick up a file and I can walk into a courtroom and do a trial. But I have – I'm familiar with the facts of the case because I spoke with my potential client 3 months ago. That's the extent, though. I've only read the [certification] for probable cause. I have not interviewed any witnesses, I have not read any supplemental follow-up police reports, I haven't spoken with any of the police officers.

I believe that the accused has a right to choice of counsel but I also believe that the accused would be able to, if you will, consent to the type of defense that he would have.

I am sensitive to the accused's position. I can do a trial and I can be as prepared as possible, but I don't think I would be as competent. And so I don't want to say no I wouldn't do it; I just want to say I don't believe it's a good idea. And I haven't had a chance to have a full on discussion with Mr. Abdi about this. I just don't think it would be a good idea.

But I can do a trial. Hand me a file and I can do a trial. That's essentially what would be happening. I haven't interviewed any witnesses, I haven't read any police reports or any follow-up report.

THE COURT: Okay. I think I understand your position.

MR. DOYLE: Can I ask one other thing for the record, Your Honor?

THE COURT: Yes.

MR. DOYLE: I also just want the record to reflect, and, Ms. Rogers Kemp, just ask for your agreement on this, because we don't have a record of this yet, you did not sit through opening statements or any of the witness testimony so you couldn't speak [to] the demeanor of the witnesses as they testified, and you would not be

able to assess that from simply listening to a recording because you have not been present at this trial throughout any of the testimony today; is that correct?

MS. ROGERS KEMP: Yes.

MR. DOYLE: Okay.

THE COURT: Did you wish to be heard?

MR. GARRETT: Your Honor, I will happily step back, I will happily finish this trial, however this court decides. I will say whether or not it's Mr. Warsame's choice at this point I think that this is getting ridiculous. That's what I'll say.

THE COURT: Anything you want to say, sir?

MR. WARSAME: I believe this is my choice. This is something to do with my life. And if I felt comfortable with different counsel it's my choice. Nobody make [sic] the choice for me, Your Honor.

THE COURT: All right. Anything further from the State?

MR. DOYLE: I guess because this is an area, as the Court's aware, that is ripe for appeal and I just want to make sure. It sounds like what we're hearing from Ms. Rogers Kemp that she is saying that because she has not interviewed any witnesses, she did not appear for testimony, and didn't – wasn't able to assess the credibility of witnesses *that she would have a difficult time as of Monday resuming this trial and providing effective assistance of counsel. Is that correct, Ms. Rogers Kemp?*

MS. ROGERS KEMP: *Yes.*

MR. DOYLE: Okay. Thank you.

(Emphasis added.)

Immediately following this discussion, the trial judge ruled:

Sir, while it is undoubtedly your choice if you had made this choice a while ago, it is simply not your choice when we are mid-trial. I cannot allow competent, prepared, effective counsel to be substituted by a counsel who I have utmost respect for, but one who has not been at this trial, not observed the witnesses, cannot argue about what the witnesses testified, has no ability in two days

-6-

to do all the things your lawyer has, has not read the police reports, has not done witness interviews. There is absolutely no way she can be prepared to be an effective advocate. *And I cannot substitute an advocate who is not in a position to give you effective assistance of counsel.*

So I am not going to be allowing this substitution midstream in trial with an attorney, although I have great respect for, is simply not in a position to give you effective representation. So I would deny the request at this time. If you had done this months earlier certainly it could be done. It cannot be done mid-trial. So that request is denied.

(Emphasis added.)

The trial continued. The jury found Warsame guilty of all three counts and found that the aggravating factor had been proved. Warsame was sentenced to concurrent standard range sentences of 14 months of confinement on the assault in the second degree conviction, 12 months of confinement on the felony harassment conviction, and 364 days of confinement on the assault in the fourth degree conviction.

Warsame now appeals.

II

Warsame contends that the trial court violated his Sixth Amendment right to be represented by his counsel of choice by denying his motion—made at the end of the third day of trial—to substitute his newly retained private attorney for his appointed counsel as his legal representative. We disagree.

"The Sixth Amendment and article 1, section 22 of the Washington Constitution guarantee the accused the right to counsel." State v. Hampton, 182 Wn. App. 805, 817, 332 P.3d 1020 (2014), review granted, 182 Wn.2d 1002, 342

-7-

P.3d 327 (2015); accord State v. Roberts, 142 Wn.2d 471, 515, 14 P.3d 713

(2000). Indeed,

> the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause.

Strickland v. Washington, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L.

Ed. 2d 674 (1984).

"The United States Supreme Court has found the counsel clause to have

two distinct elements: 'the right to the effective assistance of counsel' and '[t]he

right to select counsel of one's choice.'" State v. Sanchez, 171 Wn. App. 518,

541, 288 P.3d 351 (2012) (alteration in original) (quoting United States v.

Gonzalez-Lopez, 548 U.S. 140, 146-48, 126 S. Ct. 2557, 165 L. Ed. 2d 409

(2006)). The effective assistance element "envisions counsel's playing a role

that is critical to the ability of the adversarial system to produce just results."

Strickland, 466 U.S. at 685.

> The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled.

Strickland, 466 U.S. at 685 (quoting Adams v. United States ex rel. McCann, 317

U.S. 269, 275, 63 S. Ct. 236, 87 L. Ed. 268 (1942)). The knowledge, skill, and

effectiveness of counsel is of utmost importance because

> [a]n accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.
>
> For that reason, the Court has recognized that "the right to counsel is the right to the effective assistance of counsel."

Strickland, 466 U.S. at 685-86 (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

The counsel of choice element, in contrast, refers to the ability of a defendant to have a choice among those attorneys who are capable of providing constitutionally effective assistance. Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). Because each element of the counsel clause is distinct, neither can be substituted for the other. Gonzalez-Lopez, 548 U.S. at 148.

The right to counsel of choice "'guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.'" Gonzalez-Lopez, 548 U.S. at 144 (quoting Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-625, 109 S. Ct. 2646, 105 L. Ed. 2d 528 (1989)). In essence, it is "the right of a defendant who does not require appointed counsel to choose who will represent him." Gonzalez-Lopez, 548 U.S. at 144. "It commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." Gonzalez-Lopez, 548 U.S. at 146. "It has been regarded as the root meaning of the constitutional guarantee." Gonzalez-Lopez, 548 U.S. at 147-48.

In the event that a deprivation of this constitutional guarantee occurs, the deprivation is

> "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice—which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel—which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

Gonzalez-Lopez, 548 U.S. at 148.

As with most constitutional guarantees, however, the constitutional guarantee to be represented by counsel of choice is not absolute. State v. Aguirre, 168 Wn.2d 350, 365, 229 P.3d 669 (2010) ("'A defendant does not have an absolute, Sixth Amendment right to choose any particular advocate.'" (quoting State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997))). In fact,

> while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. See Morris v. Slappy, 461 U.S. 1, 13-14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983); Jones v. Barnes, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983).
> The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects. Regardless of his persuasive powers, an advocate who is not a member of the bar may not represent clients (other than himself) in court. Similarly, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant. Nor may a defendant insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government.

Wheat, 486 U.S. at 159 (footnote omitted). Indeed, where a lawyer cannot perform to the "baseline requirement of competence" imposed by the Sixth

-10-

Amendment, <u>Gonzalez-Lopez</u>, 548 U.S. at 148, that lawyer fails to constitute "Counsel" within the guarantee of the Sixth Amendment. <u>Strickland</u>, 466 U.S. 686 ("'the right to counsel is the right to the effective assistance of counsel'" (quoting <u>McMann</u>, 397 U.S. at 771 n.14)).

Because a lawyer who cannot provide effective assistance of counsel does not constitute Sixth Amendment counsel,[3] a defendant has no right to choose to be represented by that lawyer (thus forfeiting the right to Sixth Amendment effective assistance of counsel). In this regard, a lawyer who cannot perform to the baseline requirement of competence is disqualified from being the defendant's "choice" on the same basis that a lawyer with a conflict of interest is so disqualified. <u>See</u> <u>Wheat</u>, 486 U.S. at 159. In neither instance will the lawyer's performance provide the right guaranteed by the Sixth Amendment. Thus, in neither instance does the lawyer constitute Sixth Amendment "Counsel."

By the time that attorney Rogers Kemp appeared on the scene, and the court ruled on Warsame's request, the jury had been sworn (meaning that jeopardy had attached), opening statements had been given, the third day of trial had concluded, and two witnesses had completed their testimony (including one of the alleged victims). Warsame did not want a continuance but, rather, wanted to "pursue this trial" with his new lawyer.

---

[3] "That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command." <u>Strickland</u>, 466 U.S. at 685.

Armed with the knowledge that Warsame wished to proceed, and honoring his right to do so, the trial judge inquired into the current level of knowledge and skill possessed by his newly retained counsel. During this inquiry, attorney Rogers Kemp, while offering that "I can pick up a file and I can walk into a courtroom and do a trial," candidly admitted that she could not guarantee that she would provide constitutionally effective assistance of counsel, instead agreeing that "she would have a difficult time" doing so under the circumstances.

After hearing from all three attorneys—the prosecutor, Warsame's appointed counsel, and Warsame's proposed counsel—the trial court found that, "[t]here is absolutely no way [attorney Rogers Kemp] can be prepared to be an effective advocate. And I cannot substitute an advocate who is not in a position to give you effective assistance of counsel."

The trial court's ruling was sound. Warsame had a right to proceed with the trial before the jury that was then serving. He was insisting on preserving that right. He also had a right to the effective assistance of counsel, which he could not waive so as to accommodate a constitutionally deficient performance by his counsel of choice. Wheat, 486 U.S. at 162. Because the court found that Warsame's proposed attorney could not function as Sixth Amendment counsel, that attorney was not eligible to be chosen by him to serve as his counsel.

When a lawyer performs at an "unconstitutionally *ineffective*" level, "he no longer functions as 'counsel.'" Maryland v. Kulbicki, No. 14-848, 2015 WL 5774453, at *1 (U.S. Oct. 5, 2015). Recognizing this, the trial judge herein ruled

thoughtfully and correctly.  There was no abuse of discretion and no denial of

Warsame's Sixth Amendment right to counsel of choice.

Affirmed.

We concur: